

NUMBER 13-14-00319-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

BENJAMIN EBASEH-ONOFA,
INDIVIDIUALLY, AND AS PERSONAL
REPRESENTATIVE OF AND ON
BEHALF OF ALL WRONGFUL
DEATH BENEFICIARIES OF THE
ESTATE OF OMONOSIONI EBASEH-
ONOFA,                                                            Appellants,

v.

MCALLEN HOSPITALS, L.P. D/B/A
EDINBURG REGIONAL MEDICAL
CENTER,                                                          Appellee.

On appeal from the 206th District Court
of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Longoria
Memorandum Opinion by Justice Longoria**

Appellant, Benjamin Ebaseh-Onofa ("Benjamin"), individually and on behalf of all wrongful-death beneficiaries of the estate of his deceased wife, Omonosioni Ebaseh-Onofa ("Onofa"), challenges summary judgment in favor of appellee McAllen Hospitals, LP, d/b/a Edinburg Regional Medical Center ("the Hospital"). We affirm.

## I. BACKGROUND

In March of 2009, Mexican health officials reported an outbreak of a strain of Novel Influenza A H1N1, also known as the swine flu virus ("H1N1"). Health officials reported the first Texas case on April 23, 2009. During this time period, Onofa worked as a nurse at the Hospital's Pediatric Intensive Care Unit ("PICU") in McAllen, Texas, where there were no confirmed cases of H1N1 infections, although there were some confirmed cases in other parts of the Hospital.

According to Benjamin's deposition, on the evening of Friday, May 29, 2009, Onofa returned home from a shift at the PICU "not feeling well." Her symptoms worsened, and she sought medical care. A rapid test for influenza strains A and B performed by Onofa's family doctor on June 1, 2009 returned negative. Onofa's symptoms worsened, and she was admitted to the emergency room on June 3, 2009. Onofa died on June 5, 2009. An autopsy determined that the cause of death was the H1N1 virus.

On May 16, 2011, Benjamin filed suit against the Hospital for wrongful death, alleging that the Hospital was grossly negligent.[1] Benjamin specifically alleged that the

---

[1] Benjamin also brought claims against the Hospital for negligence and negligence per se. The trial court dismissed those claims pursuant to a Rule 11 agreement because they were barred by the exclusive remedy provision of the Texas Worker's Compensation Act. *See* TEX. LAB. CODE ANN. § 408.001(a) (West, Westlaw through 2013 3d C.S.).

Hospital knew that Onofa was caring for patients in the PICU with confirmed or suspected infections with H1N1, but failed to provide Onofa with an N95 respirator mask to wear during her shifts. At the time, the Centers for Disease Control (CDC) had issued guidelines recommending that masks be used by healthcare workers caring for such patients. Benjamin further alleged that the Hospital failed to comply with CDC guidelines requiring hospitals to monitor healthcare workers caring for such patients for symptoms of respiratory illness. Benjamin's allegation that the Hospital failed to monitor Onofa assumes that Onofa became infected at the PICU; however, he does not assert that the alleged failure to monitor alone caused Onofa's death.

On August 29, 2013, the Hospital filed an amended no-evidence motion for summary judgment. *See* TEX. R. CIV. P. 166a(i). Even though Benjamin pleaded a claim for gross negligence, the Hospital moved for no-evidence summary judgment on the causation element of a Health Care Liability Claim (HCLC).[2] The Hospital did not assert in its motion for summary judgment or elsewhere that Benjamin's claim should be dismissed for failure to file an expert report, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (West, Westlaw through 2013 3d C.S.), but rather that it should have been dismissed because there was no evidence of the essential Health Care Liability Claim element of causation.

On September 24, 2013, Benjamin filed a response to the Hospital's no-evidence motion for summary judgment and filed an amended response on November 19, 2013.

---

[2] We note that filing special exceptions is preferred over summary judgment as a procedure to challenge a defect in the opposing party's pleadings. *See generally Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000) ("An opposing party should use special exceptions to identify defects in a pleading so that they may be cured, if possible, by amendment.").

Benjamin's amended response to the motion for summary judgment contained a combination of special exceptions and a motion to strike alleging that the Hospital's motion for summary judgment addressed a claim that Benjamin did not plead. The trial court did not rule on the combined motion to strike and special exceptions orally or in writing. On November 22, 2013, the trial court set Benjamin's motion for submission on December 20, 2013.

Benjamin's amended response to the Hospital's no-evidence motion for summary judgment attached three pieces of evidence in support of his claim: an affidavit of Harry F. Hull, M.D., an epidemiologist who served as one of Benjamin's experts; selected pages from the transcript of Dr. Hull's deposition; and redacted medical records of a patient being treated in the PICU at the same time as Onofa. Dr. Hull averred that he reviewed all redacted patient records provided by the Hospital, and in his opinion, this particular patient's symptoms were consistent with H1N1. Dr. Hull further testified that this patient was the source of Onofa's infection with H1N1. The Hospital filed a reply to Benjamin's response in which it asserted that the medical records reflected that patient tested negative for influenza. The Hospital attached to its reply an affidavit from Rebecca Rene Palacios. In the affidavit, Palacios identified the medical records on which Dr. Hull relied as her own and asserted that she was not infected with H1N1 at the time of her stay in the PICU. Palacios further stated that she has never tested positive for H1N1.

Benjamin had earlier filed a motion to compel the Hospital to respond to his fourth set of requests for production relating to the medical records of patients in the PICU during Onofa's shifts there. The Hospital had previously produced redacted selections from each of the medical records of those patients, and Benjamin's motion requested the

4

complete medical records, with redactions, of those patients. Benjamin filed an amended motion to compel on December 2, 2013, requesting the same records. At a hearing on December 20, 2013, the trial court considered Benjamin's amended motion to compel and also submitted the Hospital's amended motion for summary judgment. Benjamin did not object to the submission.[3] On January 7, 2014, the trial court signed an order granting Benjamin's first amended motion to compel. The order directed the Hospital to produce the complete redacted medical records of the patients in the PICU during Onofa's time there. The parties signed a Rule 11 agreement briefly extending the deadline, making the discovery due January 29, 2014. On that date, the Hospital produced discovery in response to the court's order and tendered supplemental discovery on February 7, 2014.

On February 18, 2014, Benjamin filed a motion to continue the trial setting, which was set at the time for February 24, 2014. However, Benjamin never filed a motion to continue the submission of the Hospital's no-evidence summary-judgment motion. On February 19, 2014, the trial court granted the motion to continue the trial setting and informed the parties by letter that she was granting the Hospital's motion for summary judgment. The letter reflected that the judge considered (1) the Hospital's first amended motion for summary judgment; (2) Benjamin's response and motion to strike the Hospital's motion; (3) the Hospital's reply to Benjamin's response and motion to strike, (4) Benjamin's first amended response; and (5) the Hospital's supplemental reply to Benjamin's response to the Hospital's motion for summary judgment. The trial court signed a final judgment on March 10, 2014.

Benjamin timely filed a motion for reconsideration or for new trial in which he

---

[3] The hearing on December 20, 2013 was apparently unrecorded because the docket sheet reflects that the parties' attorneys were present. However, there is no reporter's record of the hearing.

5

alleged that: (1) the trial court granted summary judgment on a claim not addressed in the Hospital's motion; (2) Dr. Hull's original affidavit provided evidence of causation; and (3) Benjamin did not have adequate time for discovery. In response to the trial court's question at the hearing, Benjamin's counsel confirmed that he never filed a motion to continue the submission of the Hospital's motion for summary judgment. Benjamin's counsel also confirmed that he did not file any pleading mentioning the need for more time before the trial court ruled on the Hospital's motion for summary judgment.

The remainder of the hearing on Benjamin's motion for new trial turned on his assertions that the new portions of the medical records produced by the Hospital confirmed Dr. Hull's opinion that Palacios was the source of Onofa's infection. The Hospital responded that it fully produced Palacios' medical records, including the influenza test results, several months before. The trial court requested that the Hospital submit an affidavit to that effect by 5:00 p.m. on May 21, 2014. The trial court gave Benjamin the same deadline to demonstrate how any of the late-produced selections of medical records raised an issue of fact on Benjamin's claim. The Hospital submitted the requested affidavit by the deadline, but Benjamin did not file Dr. Hull's amended affidavit until 6:38 p.m. on the same day. Benjamin did not file a motion for leave to file the affidavit or otherwise request that the trial court consider the second affidavit. Benjamin's motion for new trial was eventually overruled by operation of law.

By three issues, which we have reordered and will address as four, Benjamin asserts that the trial court erred by: (1) granting no-evidence summary judgment to the Hospital on a claim not raised in Benjamin's pleadings; (2) considering evidence attached to the Hospital's no-evidence motion for summary judgment; (3) refusing to consider Dr.

6

Hull's amended affidavit; and (4) granting summary judgment when Benjamin produced more than a scintilla of evidence supporting causation.

## II. WAS SUMMARY JUDGMENT GRANTED ON A CLAIM NOT ADDRESSED IN THE MOTION?

By his first issue, Benjamin argues that the trial court erred by granting summary judgment on his gross negligence cause of action, which the Hospital did not address in its motion. Benjamin reasons that the Hospital's motion addressed the elements of an HCLC while Benjamin pleaded a claim for gross negligence. *See Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013) (per curiam) ("Granting a summary judgment on a claim not addressed in the summary judgment motion therefore is, as a general rule, reversible error.").

The Hospital responds that its motion was proper because Benjamin's claim was an HCLC regardless of the way in which he chose to plead it. *See Yamada v. Friend*, 335 S.W.3d 192, 196 (Tex. 2010) (observing that "[w]hether a claim is a health care liability claim depends on the underlying nature of the claim being made" and that "artful pleading does not alter that nature"). The Hospital argues in the alternative that the difference between Benjamin's pleadings and the Hospital's motion is irrelevant because Benjamin had the burden to prove causation under a gross negligence claim or an HCLC, and there was no evidence that the Hospital's actions or failure to act under either claim were the proximate cause of Onofa's death.

Texas Rule of Civil Procedure 166a(i) requires the movant to challenge the evidentiary support for a specific essential element of the nonmovant's claim or defense. *Id.* The motion shifts the burden onto the nonmovant to come forward with some evidence of the challenged essential element or elements. *Lampasas v. Spring Ctr., Inc.*, 988

S.W.2d 428, 436 (Tex. App.—Houston [14th Dist.] 1999, no pet.). If the nonmovant does not carry its burden, then the court must grant summary judgment on all of the nonmovant's claims containing the challenged element or elements. *Id.*

Benjamin is correct that, as a general rule, a trial court cannot grant no-evidence summary judgment on grounds not presented in the motion. *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). However, we disagree that the trial court granted summary judgment on a claim not addressed by the pleadings. The Fourteenth Court of Appeals addressed a similar issue in *Kennedy v. Arahzadeh*. No. 14-98-00428-CV, 1999 WL 418369, at *3 (Tex. App.—Houston [14th Dist.] June 24, 1999, no pet.) (mem. op.). The appellant in that case sued a dentist for negligence, gross negligence, and fraud arising out of the dentist's treatment of the appellant. *Id.* at *1. The dentist moved for no-evidence summary judgment alleging that the appellant's claims were HCLCs and that there was no evidence of either a breach of an accepted standard of care applicable to dentists treating a patient or that the departure proximately caused the appellant's injuries. *Id.* The Fourteenth Court of Appeals concluded that the appellant's claims were HCLCs because all were necessarily predicated on a departure from accepted standards of medical care. *Id.* at *2. The court concluded that the dentist's motion encompassed the appellant's claims because the motion challenged the existence of evidence of both a breach of the standard of care and of causation, elements common to a claim for negligence and an HCLC. *Id.* at **2–3. Being guided by the Houston Court's analysis, we conclude that Benjamin's claim is an HCLC because it is predicated on a departure from the accepted standard of care applicable to a health care provider.

8

We further conclude that the Hospital's motion was broad enough to encompass Benjamin's claim because it challenged the essential element of causation, which is common to both claims. In *Texas West Oaks Hospital, LP v. Williams*, the Texas Supreme Court addressed a dispute between a mental hospital and one of its employees over the hospital's alleged failure to protect the employee from a dangerous patient. 371 S.W.3d 171, 175–76 (Tex. 2012). The Court rejected Williams's argument that his claim was not an HCLC, explaining that the dispute was, "at its core, over the appropriate standards of care owed to this mental health professional in treating and supervising a psychiatric patient at the mental hospital, what services, protocols, supervision, monitoring and equipment were necessary to satisfy the standard, and whether such specialized standards were breached." *See id.* at 182. The same reasoning is applicable here. Regardless of the form of Benjamin's pleadings, at its core, Benjamin's dispute with the Hospital is over the appropriate standard of care that the Hospital owed to Onofa, a nursing professional treating patients potentially infected with H1N1, "what services, protocols, supervision, monitoring and equipment were necessary to satisfy the standard, and whether such specialized standards were breached." *Id.* at 182. Benjamin cannot escape the nature of his claim by pleading it in a different manner. *See Yamada*, 335 S.W.3d at 196. Furthermore, the Hospital's motion challenged the evidence supporting causation, an essential element that is common to both an HCLC and a claim for gross negligence. *See Tex. W. Oaks Hosp.*, 371 S.W.3d at 179–80 (stating that one of the elements of an HCLC is that the defendant's departure from the standard of care proximately cause the plaintiff's injuries); *Frias v. Atl. Richfield Co.*, 999 S.W.2d 97, 103 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (stating that one of the elements of a

9

claim for gross negligence authorized by the Texas Workers' Compensation Act is causation) (citing TEX. LAB. CODE ANN. § 408.001(b) (West, Westlaw through 2013 3d C.S.)). Because the Hospital's no-evidence motion for summary judgment challenged the causation element of Benjamin's claim, we conclude that the Hospital's motion was broad enough to encompass it. *See Lampasas*, 988 S.W.2d at 436–37; *see also Kennedy*, 1999 WL 418369, at *3.

Having concluded that the Hospital's motion address Benjamin's claim, we overrule Benjamin's first issue.

### III. EVIDENCE ATTACHED TO THE HOSPITAL'S MOTION

Benjamin asserts in his second issue that the trial court erred by considering the evidence attached to the Hospital's summary-judgment motion. Benjamin reasons that the Texas Supreme Court has ruled that if the moving party attaches evidence to a no-evidence motion, "that evidence should not be considered unless it creates a fact question." *Binur v. Jacobo*, 135 S.W.3d 646, 651 (Tex. 2004).

We agree that attaching evidence to the motion was improper and that the Hospital may not rely on that evidence on appeal. *See id.* We also agree that it appears from our review of the record the trial court may have considered some of the evidence. For example, a docket sheet entry for December 17, 2013 reflects that the trial court "reviewed all documents tabbed by courts staff on [the Hospital's] amended motion for summary judgment." Benjamin argues that considering the evidence was "improper" but does not explain how the court's review of the improperly attached evidence amounted to reversible error. *See* TEX. R. APP. P. 38.1(i) (holding that the appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations

10

to authorities and to the record").[4]  Even a novel argument must be grounded in analogous case law or present the relevant jurisprudential framework for evaluating the claim. *Abdelnour v. Mid Nat'l Holdings, Inc.*, 190 S.W.3d 237, 241–42 (Tex. App.—Houston [1st Dist.] 2006, no pet.).  Because Benjamin does not explain why the court's consideration of the evidence attached to the motion was reversible error, we overrule Benjamin's second issue.  *See* TEX. R. APP. P. 38.1(i); *see also Abdelnour*, 190 S.W.3d at 241–42.

## IV. DID BENJAMIN HAVE ADEQUATE TIME FOR DISCOVERY?

By his third issue, Benjamin asserts that he did not have adequate time to make use of the full set of medical records of Palacios' stay at the PICU, and that those records "confirm and reinforce" Dr. Hull's opinion that Palacios was the cause of Onofa's infection. Benjamin reasons that the trial court should have granted him adequate time to make use of these records.

Texas Rule of Civil Procedure 166a(i) provides that a party may move for no-evidence summary judgment after an adequate time for discovery has passed.  TEX. R. CIV. P. 166a(i).  The rules require only that there was an adequate time for discovery, not that discovery be completed.  *Specialty Retailers, Inc. v. Fuqua*, 29 S.W.3d 140, 145 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).  A party claiming inadequate time for discovery must either file an affidavit explaining the need for more time or a verified motion for continuance.  *Reule v. Colony Ins. Co.*, 407 S.W.3d 402, 407 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *Rankin v. Union Pac. R. Co.*, 319 S.W.3d 58, 67 (Tex. App.—San Antonio 2010, no pet.).  Benjamin's counsel filed neither a verified motion for

---

[4] *Binur v. Jacobo*, the sole case Benjamin cited in this issue, holds only that evidence attached to a no-evidence motion should not be considered.  135 S.W.3d 646, 651 (Tex. 2004).  *Binur* does not hold that considering evidence attached to a no-evidence motion is reversible error.  *See id.*

11

a continuance nor an affidavit. Based on the foregoing, we conclude that Benjamin has waived his complaint of inadequate time for discovery.[5] *See Reule*, 407 S.W.3d at 407; *Rankin*, 319 S.W.3d at 67. We overrule Benjamin's third issue.

## V. Did the Trial Court Properly Grant Summary Judgment?

By his fourth issue, Benjamin asserts that summary judgment should not have been granted because he produced more than a scintilla of evidence on the essential HCLC element of causation.

### A. Standard of Review

We review the trial court's decision to grant summary judgment de novo. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). When, as here, the trial court does not specify the ground for its ruling, we will affirm if any of the grounds presented in the motion were meritorious. *Id.*

A no-evidence summary-judgment motion filed under Texas Rule of Civil Procedure 166a(i) is essentially a motion for a pretrial directed verdict; it requires the nonmoving party to present evidence raising a genuine issue of material fact supporting each element contested in the motion. *Mack Trucks*, 206 S.W.3d at 581–82. Evidence raises a genuine issue of fact if it is more than a scintilla. *Ciguero v. Lara*, No. 08-13-00075-CV, ___ S.W.3d ____, 2015 WL 136197, at *2 (Tex. App.—El Paso Jan. 9, 2015, no. pet). "If the evidence supporting a finding rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions, then more than a scintilla of evidence exists." *Id.* Evidence is less than a scintilla if it is "so weak as to do no more than create a mere surmise or suspicion of a fact." *Nalle Plastics Family Ltd. P'ship v.*

---

[5] Moreover, on the same day as the trial court's deadline, Benjamin filed Dr. Hull's new affidavit, which thoroughly evaluated those records.

12

*Porter, Rogers, Dahlman & Gordon, P.C.*, 406 S.W.3d 186, 199 (Tex. App.—Corpus Christi 2013, pet. denied) (internal quotations omitted). We review the summary judgment record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Neely v. Wilson*, 418 S.W.3d 52, 60 (Tex. 2013) (op. on reh'g).

## B. Discussion[6]

Benjamin asserts that he produced more than a scintilla of evidence from which a reasonable factfinder could conclude that the Hospital's inaction caused Onofa's death. Benjamin reasons that Onofa was exposed to patients with H1N1. Benjamin further asserts that the standard of care set by the CDC required that healthcare workers use N95 masks when treating patients suspected of having H1N1, and that the Hospital monitor staff for symptoms of respiratory illness. Benjamin asserted that the Hospital disregarded the standard set by the CDC by not providing Onofa with an N95 mask, not requiring her to use it, and not monitoring her. The Hospital responds that there was no evidence in the record that Onofa was exposed to H1N1 while working in the Hospital,

---

[6] As a threshold matter, the Hospital asserts that Benjamin waived this issue because he did not address causation in his response to the trial court. We may not consider on appeal any ground for reversal that was not expressly presented to the trial court by motion, answer, or other response to the motion for summary judgment. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993); *Holloway v. Tex. Elec. Util. Const., Ltd.*, 282 S.W.3d 207, 211 (Tex. App.—Tyler 2009, no pet.). Benjamin was not required to marshal his proof in his response, but only "point out evidence that raises a fact issue on the challenged elements." *Smith v. Mosbacker*, 94 S.W.3d 292, 294 (Tex. App.—Corpus Christi 2002, no pet.) (citing TEX. R. CIV. P. 166a(i) cmt.).

The response and amended response filed by Benjamin's counsel admittedly do not use the word "causation." However, reading the factual background and the argument section of the response together, it is clear that Benjamin asserted that the Hospital caused Onofa's death by failing to follow CDC guidelines regarding the use of respirator masks and the monitoring of healthcare personal for signs of respiratory illness. It is also clear that he asserted that the evidence attached to the response is more than a scintilla. *See Smith*, 94 S.W.3d at 294. The language used in the response could have been clearer, but it sufficed to make Benjamin's argument. *See McConnell*, 858 S.W.2d at 341. We will accordingly address Benjamin's challenge on the merits.

and even assuming that the standard of care required her to wear the N95 mask, there is no evidence that she did not wear one.

Viewing the evidence in the light most favorable to Benjamin and indulging every reasonable inference in his favor as we must, we conclude that Benjamin did not present any evidence that Onofa became infected with H1N1 while working in the PICU. Dr. Hull speculated during his deposition that "it was very likely" that there were unconfirmed cases of H1N1 in the PICU at the time because the virus was spreading in the community. However, Dr. Hull's statement in his affidavit that Palacios was the source of Onofa's infection was the only evidence Benjamin put forward regarding causation. We have reviewed both the part of Palacios's medical records that Dr. Hull relied on in his initial affidavit and the part of the records disclosed by the Hospital following the ruling on the motion to compel, and both sets explicitly state that Palacios' "Rapid influenza test A and B were negative." Because Palacios tested negative for influenza, Benjamin had no evidence that Onofa became infected in the PICU as opposed to the community at large.

Benjamin also cites to Dr. Hull's amended affidavit, filed after Benjamin moved for a new trial.[7] However, we may not consider Dr. Hull's affidavit because it is not part of the summary judgment record. Benjamin filed Dr. Hull's second affidavit almost two hours after the deadline set by the trial court expired. Late-filed evidence may become part of the summary judgment record on leave of the court. *Benchmark Bank v. Crowder*, 919

---

[7] The amended affidavit, which Benjamin contends establishes causation, contained all of the information in the first affidavit and a new substantive assertion: there were no confirmed cases of H1N1 in the PICU at the relevant time because there were no rapid tests for H1N1 commercially available at the time. According to the amended affidavit, the rapid tests for Influenza A and B had "high rates of false negatives results and [so] physicians could not rely on rapid tests to determine if a patient was ill with" H1N1. At the time, the only reliable way to confirm infection by H1N1 was a time-consuming laboratory culture. Because there is no evidence such a test was performed for Palacios, and her symptoms were otherwise consistent with H1N1, Dr. Hull reasons that the negative test does not establish that Palacios was not infected with H1N1.

14

S.W.2d 657, 663 (Tex. 1996); *Ciguero*, 2015 WL 136197, at *1 n.1. Without an affirmative indication in the record that the trial court granted leave, we presume that the trial court did not consider the evidence. *Alphaville Ventures, Inc. v. First Bank*, 429 S.W.3d 150, 154 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing *INA of Tex. v. Bryant*, 686 S.W.2d 614, 615 (Tex. 1985)). We have reviewed the record and found no affirmative indication that the trial court granted leave. Benjamin also did not file a motion for extension of time, a motion for leave, or otherwise request that the trial court consider the affidavit. Dr. Hull's affidavit is therefore not part of the summary judgment record, and we may not consider it. *See id.*; *Pipkin v. Kroger Tex., L.P.*, 383 S.W.3d 655, 663 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

Excluding Dr. Hull's amended affidavit and reviewing the remaining evidence in the light most favorable to Benjamin, we conclude that Benjamin produced nothing more than speculation on the element of causation. Without any evidence that there were patients positive for H1N1 in the PICU during the time that Onofa worked there, the evidence Benjamin brought forth does "no more than create a mere surmise or suspicion" that Onofa became infected with H1N1 in the PICU as opposed to elsewhere in the community. *See Nalle Plastics*, 406 S.W.3d at 199.

In sum, we conclude that Benjamin did not carry his burden to produce more than a scintilla of evidence on the challenged element of causation. *See Ciguero*, 2015 WL 136197, at *2. Accordingly, we overrule Benjamin's fourth issue.

## VI. Conclusion

We affirm the judgment of the trial court.


NORA L. LONGORIA
Justice


Delivered and filed the
21st day of May, 2015.